IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOINA LILIANA GRANCEA          )
                                )
    Plaintiff,                   )
                                )
-vs-                             )   Civil Action No. 18-1357
                                )
ANDREW M. SAUL,                  )
                                )
    Defendant.                   )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Doina Liliana Grancea ("Grancea") filed an application for a period of disability and disability insurance benefits in February of 2015. (R. 12)[1] She alleged disability based upon both physical and mental impairments. Her application was denied. She was represented by counsel at a hearing before an Administrative Law Judge ("ALJ") during which both she and a vocational expert ("VE") testified. (R. 12) Ultimately, the ALJ denied benefits and the Appeals Council denied Grancea's request for review. Grancea then filed this appeal. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 8 and 14. For the reasons set forth below, the ALJ's decision is vacated and the case is remanded for further consideration.

### Opinion

---

[1] Grancea filed a previous claim in June of 2013. (R. 12) That application was denied and Grancea did not appeal. (R. 12) Consequently, the ALJ's decision in the current case "addresses the claimant's allegations of disability from September 13, 2013, the day after the previous decision," through October 18, 2017, the date of the ALJ's decision. (R. 12)

1

1. <u>Standard of Review</u>

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa.

1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

As stated above, the ALJ denied Grancea's claim for benefits. More specifically, at step one, the ALJ found that Grancea has not engaged in substantial gainful activity since the alleged onset date. (R. 15) At step two, the ALJ concluded that Grancea suffers from the following severe impairments: migraine headaches, depressive disorder, adjustment disorder with mixed anxiety and depressed mood, and fibromyalgia. (R. 15) At step three, the ALJ determined that Grancea does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.15-17) Between steps three and four, the ALJ decided that Grancea has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 17-23) At step four, the ALJ found that Grancea is able to perform her past relevant work as a janitor as it was actually performed. (R. 23) At the fifth step of the analysis, the ALJ concluded that, considering Grancea's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 23-4)

3

III. Discussion

Grancea presents several issues on appeal, yet I only need to address her concerns with the ALJ's assessment of her migraines. Specifically, I limit my focus to her contention that the ALJ erred in failing to conclude that her migraines equaled a listed impairment at the third step of the sequential analysis.

Both parties agree that there is no Listing specifically for migraines and that the most analogous Listing is 11.02 (Epilepsy). *See* ECF Docket No. 9, p. 9 and Docket No. 15, p. 12. Listing 11.02 can be met "where the claimant experiences generalized tonic-clonic seizures at least once per month for three consecutive months, or where the claimant experiences dyscognitive seizures at least once per week for three consecutive months, despite adherence to prescribed treatment." *Snow v. Berryhill*, Civ. No. 18-434, 2019 WL 1873551, at * 4 (N.D. Ind. April 26, 2019), *citing*, 20 C.F.R. Part 404, Supbpt. P, App. 1 (Listing 11.02(A) and (B)). Listing 11.02 can *also* be met "where the claimant experiences less frequent but more severe seizures that result in marked limitations in the claimant's ability to function." *Id.*, at * 4, n. 2, *citing*, 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing 11.02(C) and (D)).

Here, Grancea urges that she can demonstrate medical equivalence under this alternate option – Listing 11.02(D). The Listing provides, in relevant part:

> D. Dyscognitive seizures …, occurring at least once every 2 weeks for at least 3 consecutive months… despite adherence to prescribed treatment…; and a marked limitation in one of the following:
>     1. Physical functioning or
>     2. Understanding, remembering, or applying information; or
>     3. Interacting with others; or
>     4. Concentrating, persisting, or maintaining pace; or
>     5. Adapting or managing oneself.

4

20 C.F.R. Part 404, Subpt. P, App'x. 1, § 11.02. Grancea bears the burden of proving that her migraines medically equaled this portion of Listing 11.02. *See Bassknight v. Berryhill*, Civ. No. 16-1464, 2017 WL 4364254, at * 4 (M.D. Pa. Sept. 29, 2017), *citing, Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary." *Burnett v. Commissioner of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000) (citations omitted).

In assessing whether a claimant has met or equaled a listed impairment, the ALJ must provide an explanation of his or her reasoning which is sufficient to permit a court to engage in a meaningful judicial review. *Burnett*, 220 F.3d at 119-120. "However, an ALJ need not 'use particular language or adhere to a particular format in conducting his analysis.'" *Kulbacki v. Colvin*, Civ. No. 15-297, 2016 WL 2609984, at * 6 (W.D. Pa. May 6, 2016), *quoting, Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Here, the entirety of the ALJ's step three analysis consists of the following:

> The claimant's migraine headaches do not meet or medically equal Listing 11.03[2] (Epilepsy) as there is no evidence of generalized tonic-clonic seizures occurring at least once a month for at least 3 consecutive months or dyscognitive seizures[3] occurring at least once a week for at least 3 consecutive months despite adherence or prescribed treatment. In addition, as discussed in detail below, the claimant does not have any marked limitations in the mental health B criteria.

---

[2] The ALJ's reference to Listing 11.03 appears to be a typographical error. In September of 2016, Listing 11.03 was removed. A revised Listing 11.02 addresses epilepsy and "applies to 'new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date.'" *Hill v. Berryhill*, Civ. No. 17-3198, 2019 WL 1232634, at * 3 (D. S.C. March 18, 2019), *quoting*, 81 Fed. Reg. 4304801, 2016 WL 3551949 (July 1, 2016). The language referenced by the ALJ reflects Listing 11.02 rather than Listing 11.03.

[3] "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure. 20 C.F.R. Part 404, Subpt. P, App. 1. § 11.00(H)(1)(b).

(R. 16)

I find the ALJ's analysis to be deficient. It is not clear whether the ALJ concluded that Grancea did not have dyscognitive seizures frequently enough, or that she did not adhere to the prescribed treatment. Certainly, there is evidence in the record which indicates Grancea satisfies these requirements. (R. 19-20) Further, the ALJ's reference to Grancea's failure to satisfy the mental health B criteria is misplaced.[4] Simply stated, there isn't sufficient analysis upon which to make an informed review.

Additionally, the ALJ seemingly failed to consult the Programs Operation Manual System ("POMS") for guidance on this issue. The Third Circuit Court has "characterized the POMS as the publicly available operating instructions for processing Social Security claims. The Supreme Court has stated that [w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect." *Hess v. Commissioner of Social Security*, Civ., 931 F.3d 198, 212 n. 15 (3d Cir. 2019), *quoting, Kelley v. Comm'r. of Soc. Sec.*, 566 F.3d 347, 350 n. 7 (3d Cir. 2009) (internal quotation marks omitted). "POMS establishes the generally understood meaning of terms within the social security regulatory framework." *Hess v. Comissioner of Soc. Sec.*, 931 F.3d 198, 212, n. 15 (3d Cir. 2019). POMS DI 24505.015[5] provides as follows:

---

[4] The ALJ refers to his discussion regarding the "mental health B criteria" as it relates to Listings 12.04 and 12.06. (R. 16) While there may be an overlap between the B criteria in Listings 12.04, 12.06 and 11.02, they are not duplicative. Listing 11.02D also references "physical functioning." Marked limitations in physical functioning may occur due to pain or fatigue (mental or physical) caused by a neurological disorder or its treatment. *See* Listing 11.02(D)(1). The ALJ does not engage in any discussion of Grancea's physical functioning in the context of Listing 11.02. Further, Listings 12.04 and 12.06 require at least one extreme or two marked limitations whereas Listing 11.02 requires only one marked limitation.

[5] POMS DI 24505.015 appears to have been superseded by POMS DI 24508.10. *See Worley v. Berryhill*, Civ. No. 18-16, 2018 WL 1272540, at * 5 (E.D. N.C. Feb. 4, 2019). Yet it *was* in place at the time of the ALJ's decision. As such, it should have been considered. *See David G. v. Berryhill*, Civ. No. 17-3671, 2019 WL 4572981, at * 5 (D. Minn. Sept. 24, 2018) (stating that, although POMS DI 24505.015 has been superseded by POMS DI 24508.10, because POMS DI 24505.015 was in effect at the time of the ALJ's decision, it would be considered).

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headaches with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her [activities of daily living]. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.03, Epilepsy, non-convulsive. Therefore, 11.03 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.03.

POMS § DI 24505.015(B)(7)(b) (second example). Here, there is record evidence that supports a finding that Grancea suffers from these same symptoms. Indeed, the ALJ noted that Grancea reported suffering from migraines "up to 10 to 14 days" per month, (R. 18) and "a few times per week," (R. 19) and that the month before the hearing she had a migraine every other day. (R.18) She reports that her migraines are associated with vomiting and "sensitivity to light and smell." (R. 18) Grancea also testified that she stopped working due to her migraines, and that her migraine medication leaves her unable to function for several days. (R. 18)

Further, the ALJ makes no reference to the Social Security Administration's 2009 issuance of National Q&A 09-036 ("SSA Q&A 09-036"). In SSA Q&A 09-036, the SSA:

> reviewed the essential components of listing 11.03[6] as they may relate to migraine headaches. Among other things, the SSA noted that the requirement of occurrence "in spite of at least 3 months of prescribed treatment" was inapplicable to migraines because "unlike treatment for epilepsy, which seeks to maintain a steady level of medication in the blood, there is no such standard of care in the treatment of migraine headaches." In addition, "it is not necessary for

---

[6] As stated above, Listing 11.03 is Listing 11.02's predecessor. Courts still look to SSA Q&A 09-036 for Listing 11.02. *See Snow v. Berryhill*, Civ. No. 18-434, 2019 WL 1873551, at * 4 (N.D. Ind. Apr. 26, 2019) (stating that "[t]he Commissioner's own guidance explains that, when applying the epilepsy Listings to a claimant's migraine headaches, the claimant need only experience migraines at these frequencies in order to equal the severity required for an award of benefits at step three. *See* SSA Questions & Answers 09-036, at 3.")

7

> a person with migraine headaches to have alteration of awareness as long as s/he has an effect … that significantly interferes with activity during the day." "Significant interference with activity during the day" has the "[s]ame meaning as in listing 11.03" and "[m]ay be the result, e.g., of a need for a darkened, quiet room, lying down without moving, or a sleep disturbance that impacts on daytime activities."

*Worley v. Berryhill*, Civ. No. 18-16, 2019 WL 1272540, at * 4 (E.D. N.C. Feb. 4, 2019), *quoting*, *Boerger v. Berryhill,* Civ. No. 16-1095, 2017 WL 2780584, at * 3 (W.D. Pa. June 27, 2017). *See also, Mesecher v. Berryhill*, Civ. No. 15-859, 2017 WL 998373, at * 4 (N.D. Tex. Mar. 15, 2017). Again, as stated above, there is evidence in the record which indicates that Grancea satisfies these requirements: she has experienced migraines more than once weekly and the migraines cause significant interference with her activity during the day.

The ALJ's decision prevents this Court from conducting a meaningful, albeit deferential, review. As such, the case must be remanded for further consideration on the issue of whether Grancea meets the medical equivalence of Listing 11.02. The analysis on remand may impact, and thus include, further consideration of, other issues raised by Grancea on this appeal.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOINA LILIANA GRANCEA )
    Plaintiff, )
)
 -vs- ) Civil Action No. 18-1357
)
ANDREW M. SAUL, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 13th of September, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 8) is GRANTED and the Defendant's Motion for Summary Judgment (Docket No. 14) is DENIED. It is further ORDERED that the ALJ's decision is VACATED and this case is REMANDED for further consideration consistent with the accompanying Opinion. This case shall be marked "Closed" forthwith.

                BY THE COURT:

                /s/ Donetta W. Ambrose
                Donetta W. Ambrose
                United States Senior District Judge